### FEATHERSTON v. GREER et al.
#### (No. 7175.)

(Court of Civil Appeals of Texas. Dallas. June 20, 1914. Rehearing Denied Oct. 17, 1914.)

1. EVIDENCE (§ 471*)—ADMISSIBILITY—FACTS OR CONCLUSIONS.

In a suit to recover the title and possession of a certificate of stock, pledged by plaintiff to secure a debt, and transferred by the pledgee, plaintiff's testimony that he did not authorize the pledgee to transfer or deal with the certificate in any other way than as col-

lateral security for a loan was as to a fact and not a mere conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

**2. CORPORATIONS (§ 123*)—PLEDGE OF STOCK —EVIDENCE—RELEVANCY—NOTICE OF PLAINTIFF'S CLAIM.**

In a suit to recover the title and possession of a certificate of stock, pledged by plaintiff to secure a debt and transferred by the pledgee without authority, the admission in evidence of a letter written defendant, by plaintiff, stating that the indorsement on the certificate was a forgery, that the plaintiff had not parted with the ownership of the stock, but had placed it with the pledgee as collateral to secure a loan, and that the loan had not been made, was not error, as the letter merely informed defendant of plaintiff's claim and its admission could not have injured defendant.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 618; Dec. Dig. § 123.*]

**3. CORPORATIONS (§ 123*)—CERTIFICATES OF STOCK—TRANSFER ON FORGED INDORSEMENT.**

Where a plaintiff pledged stock to secure a loan, placing an indorsement that it was deposited as collateral to secure a loan, and the pledgee, after some one had erased such indorsement, and had forged plaintiff's signature to the power of attorney thereon, transferred the certificate, no title passed to the transferee, as a forged indorsement does not pass title to commercial paper, negotiable only by indorsement.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 618; Dec. Dig. § 123.*]

**4. CORPORATIONS (§ 123*)—PLEDGE OF STOCK —AUTHORITY OF PLEDGEE TO SELL.**

Where plaintiff pledged a certificate for 100 shares of stock in a corporation to secure a loan of $1,000, the execution of a contract at the same time, by which the pledgee gave plaintiff the option, after two years from that date, to purchase from the pledgee 100 shares of the stock of such corporation for $1,000 and interest, did not show that the pledgee had authority to sell the pledged stock or estop plaintiff from showing lack of authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 618; Dec. Dig. § 123.*]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by T. A. Greer against H. H. Featherston and another. From a judgment for plaintiff, the defendant named appeals. Affirmed.

Randell & Randell, of Sherman, and Davidson & Davidson, of Dallas, for appellant. S. R. Carruth and Jones & Hassell, of Sherman, for appellees.

RAINEY, C. J. T. A. Greer brought this suit against appellant, Featherston, and the Southwestern Surety Insurance Company to recover the title and possession of 100 shares of stock of the said insurance company, and to restrain both parties from transferring same, and that said insurance company be enjoined from entering a transfer of said certificate of stock on its books. Appellee Greer alleged. in substance: That he, as owner and holder of said stock, mailed same to A. J.

Boyce & Co. for them to hold as security for the loan of $1,000. That to perfect said loan he indorsed on said stock certificate, "Deposited with A. J. Boyce & Co. as collateral to secure loan." That said loan had been promised, but plaintiff never secured same. After mailing said stock to Boyce & Co. plaintiff was notified that A. B. Wood, of Dallas, had bought said certificate bearing plaintiff's indorsement thereon in blank, and that the indorsement that plaintiff had placed on said certificate was not, at the time of the purchase by Wood, on said certificate. That he informed Wood that the indorsement in blank was a forgery, and that he had not made said indorsement nor authorized same made, nor had he authorized the sale or transfer of said certificate. That the indorsement made thereon was a forgery, and that the indorsement he had made on said stock certificate had been erased. That Featherston was claiming said certificate of stock, and that he was endeavoring to have a transfer made on the books of the insurance company. Defendant Featherston answered, in substance, that for value, and without notice, he bought said stock from J. B. Oldham, who had purchased from Wood. That said certificate was properly indorsed, and that it contained no such indorsement as plaintiff claims he had placed thereon, and that he was a purchaser in good faith. That plaintiff had executed the blank power of attorney on the back of said certificate, and had placed it in the hands of A. J. Boyce & Co., and, they being in lawful possession of said certificate and he paying value and being innocent of any wrong, he thereby acquired the title and prayed that a new certificate be issued to him. The insurance company pleaded that it had possession of the certificate, that it had no interest in the controversy, and submitted itself to the orders of the court. Verdict and judgment were rendered for plaintiff, and Featherston appeals.

### Conclusions of fact.

Plaintiff owned and possessed stock certificate No. 425 for 100 shares in the Southwestern Surety Insurance Company, a corporation. To secure a loan he indorsed on said stock certificate, "Deposited with A. J. Boyce & Co. as collateral to secure loan," and forwarded same by mail to A. J. Boyce & Co., of Texarkana, who had agreed to make a loan of $1,000. At the same time plaintiff signed the following contract, and sent it to A. J. Boyce & Co., viz.:

"All Dividends Declared on the Within Named Stock During Life of This Option will be Paid the Holder When Option is Exercised.

"No. 1260.     Option Contract.     Amt. $1,000.
"A. J. Boyce & Company,
"Suite 402 State National Bank Building, "Bankers and Brokers.

"In consideration of one dollar to them paid by T. A. Greer, A. J. Boyce & Co. give and grant to said T. A. Greer the right and option

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

at any time after 15 days after the expiration of 2 years from this date, but not before except by mutual consent, to purchase from the said Boyce & ·Company 100 shares of the capital stock of Southwestern Surety Ins. Co., a corporation, at and for the sum of one thousand dollars, with interest from this date until this option is exercised at the rate of 5 per cent. per annum; upon the payment of said sum of money within the time hereinabove specified, the said Boyce & Company bind themselves to sell and deliver unto the said T. A. Greer the said stock.

"Executed in duplicate this the 26th day of March, 1913.

"[Your signature.]  A. J. Boyce & Co.,
     "By M. F. Hinckley.
     "T. A. Greer.
"T. A. Greer."

Written in ink is the word "Original."

Plaintiff made no other indorsement on said certificate than as above stated, nor did he authorize the sale and transfer of said certificate by said Boyce & Co. On the back of said stock certificate was printed a blank assignment and power of attorney authorizing the transfer on the books of the company. A. B. Wood purchased the certificate from A. J. Boyce & Co., giving a valuable consideration. At the time Wood purchased, the indorsement, "Deposited with A. J. Boyce & Co. as collateral to secure loan," made by Greer, was erased, and the blanks in the power of attorney were filled out, and the signature of T. A. Greer written with dim ink was attached thereto, and that of A. J. Boyce as a witness. The signature of T. A. Greer to said power of attorney was a forgery, but this was not known to Wood, who bought in good faith. Wood sold to Oldham, and he to appellant, Featherston; Wood not then know-ing of the signing of the "Optional Contract," which was afterwards found among Boyce's papers.

### Opinion.

[1] 1. The court did not err in permitting T. A. Greer to testify that he did not authorize Boyce to transfer, assign, sell, or deal with the certificate in any other way than as collateral security for the loan. The subject of inquiry was whether Boyce was authorized to deal with the stock certificate only as collateral, and the testimony of Greer was as to a fact and not a mere conclusion. Witness having stated fully as to the transaction, which shows that no authority was given to Boyce to dispose of said certificate, if conceded to be error, it was harmless.

[2] 2. It is urged by appellant that the court erred in permitting a letter written by Greer to Featherston to be introduced in evidence. We do not think this was error. The letter merely notified Featherston that Greer's indorsement on the certificate was a forgery, that he had not parted with the ownership of the stock, that he had placed it with Boyce & Co. as collateral to secure a loan, and that the loan had not been made when it was indorsed. Greer, by this letter, was merely informing Featherston of his claim in the premises, and we think it clear that no injury was done Featherston by its admission.

3. The appellant assigns that the court erred in giving to the jury the first paragraph of the main charge, which reads as follows:

"If you believe from the evidence that plaintiff T. A. Greer did not sign the blank power of attorney on the certificate of stock introduced in evidence, or if you believe from the evidence that when the certificate of stock was sent to A. J. Boyce & Co. by plaintiff it had the words, 'Deposited with A. J. Boyce & Co. as collateral to secure loan,' indorsed thereon, and signed 'T. A. Greer,' and if you further believe from the evidence that said words were erased without the knowledge or consent of plaintiff, then in either of these events you will find in favor of plaintiff."

In this connection he also assigns as error the refusal to give four special charges, the principle of which is embodied in the following:

"The jury are instructed that if they believe from the evidence that at the time the said W. H. Featherston obtained the possession of said certificate there were no such erasures or alterations thereon which could be detected by a man of ordinary care and prudence, and if you further believe from all the evidence that the dealings in the matter before you, between plaintiff and A. J. Boyce & Co., was on the part of plaintiff to obtain a loan and on the part of Boyce & Co. to secure the loan, and that by agreement between them the stock in question was to be the property of the said A. J. Boyce & Co., and that then the plaintiff could take other stock by the said A. J. Boyce & Co. selling to him the same number of shares in the same company at the same par value per share on which said loan had been made or was to be made, then I instruct you that third parties purchasing from the said A. J. Boyce & Co. the said stock for value, and without notice as to said loan, would acquire good title to said stock; and, if you believe from the evidence that the defendant Featherston purchased said stock, without notice as to said plaintiff's hypothecation, and that there were no erasures upon said stock at the time of his said purchase, which a man of ordinary care and prudence would detect, then your verdict should be for the defendant Featherston."

Appellant insists that under the evidence an issue as presented in the special charges was raised and called for. We think the issue presented by the main charge of the court was all that was required under the evidence.

[3] The issue was whether Greer authorized Boyce & Co. to deal with the certificate in any way other than that of collateral security for a loan, and whether the indorsement relied on by Featherston was a forgery. The settlement of this issue settled the controversy. If Greer only made the indorsement on the certificate he claims he made when the certificate was sent to Boyce & Co., the erasure thereof and the other indorsements were made by some one else without Greer's authority; no title passed to Wood; hence Featherston had none.

In Rolling v. Railway Co., 127 S. W. 302, the court says that "it is well settled law that a forged indorsement does not pass title to

commercial paper negotiable only by indorsement."

The certificate of stock in controversy was not negotiable until properly indorsed.

[4] No negligence is charged against Greer in depositing the certificate with Boyce & Co. His doing so gave no right to Boyce & Co. to sell or transfer it. The "optional contract" shows no right in Boyce & Co. to sell the stock. It does not even show that certificate No. 425 was placed with them for any purpose. It only shows that Greer, after the expiration of two years, had the right to purchase from Boyce & Co. 100 shares of stock in said insurance company at the sum of $1,000 upon the payment of 5 per cent. interest. This shows no authority for Boyce & Co. to sell the certificate No. 425, and tends in no way to estop Greer from showing no authority in Boyce & Co. to sell.

We think the court properly charged the jury, and that the evidence is sufficient to support the judgment, and it is affirmed.